UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05CV-456-H

ROBERT A. KRIEG                                                                                              PLAINTIFF

V.

CSX TRANSPORTATION, INC.                                                                        DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This is a claim brought under the Federal Employers Liability Act ("FELA"), which makes railroads liable to any employee for injuries where its negligence played any part, even the slightest, in producing that injury. Here, Plaintiff alleges a neck injury caused by a "rough coupling." Defendant has moved for summary judgment on the grounds that events in question were regular occurrences and that Plaintiff has no proof of negligence.

I.

On April 16, 2001, Plaintiff was hired by CSXT as a switchman. Plaintiff completed his CSXT training August 1, 2001, and began work. He was furloughed August 25, 2001, for seven months, and returned to CSXT approximately early March 2002, again as a switchman. He worked as a switchman on the extraboard for approximately four months, and was moved into Remote Control Operation ("RCO") training.

When working an RCO job, the employee wears a locomotive control unit, identified as a LCU or OCU, operating control unit. An employee working an RCO job out of the Osborn Yard in Louisville is teamed with another RCO operator, who also wears an OCU, and potentially is

also capable of operating the train with his OCU. The OCU is a green box that the employee wears on a vest, weighing about 2 1/2 pounds. It consists of a computer that controls the engine's movements (back and forth), speed, brakes, horn, bell and head lights.

On August 14, 2002, Plaintiff claims he was injured as a result of a "rough coupling" while working onboard engine 6022. His co-worker, David Lantz was on the ground controlling the movement. At the time of the accident Plaintiff as Operator B positioned in the engineer seat on the right side of the unit behind the control stand. Lantz was on the ground, controlling the movement of 6022 with his OCU. Lantz testified that he made his safely stop; began to rev the unit by moving the throttle on the control box; made sure the draw bars were lined up and placed the controls at the "couple" setting. The locomotive began to build up, he heard the engine's brakes release and then he remembered locomotive 6022 lunged forward in the coupling move.

Lantz testified that as Operator A, he had no control over the lunge movement and no advance warning of it. The locomotive was moving on its own, and then spurted forward resulting in a rough coupling. Plaintiff testified that the locomotive 6022 lunged forward into the box car and he felt immediate pain in his neck. He reported the injury a short time later to Trainmaster Fred Sierota and Terminal Superintendent John Bradley.

Plaintiff testified that he personally had experienced operating problems with CSXT 6022 prior to August 14, 2002, including prior instances of the locomotive "surging," and other instances whereby 6022 would lose communication with the OCU, thereby throwing the unit into emergency. Lantz testified that this incident was similar to other rough coupling incidents that occurred fairly routinely.

On August 11, 2005 Plaintiff filed a two-count complaint against CSXT. Court I is based

upon the Federal Employers Liability Act, and Count II is based upon a violation of the Locomotive Inspection Act.

## II.

Under FELA, '[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51.  FELA provides broad remedial measures for railroad employees.  *Lisek v. Norfolk and Western Railway Company,* 30 F.3d 823, 831 (7th Cir. 1994).  In a FELA action, the railroad will be held liable if the employer's "negligence played any part, even the slightest, in producing the injury."  *Id.* at 832 (internal quotations and citations omitted).  Plaintiff's burden is significantly lighter than in an ordinary negligence case.  *Id.*

FELA is a general negligence statute and as such, it neither prohibits nor requires specific conduct by a railroad.  *Waymire v. Norfolk and Western Railway Company*, 218 F.3d 773, 775 (7th Cir. 2000).  LIA imposes absolute duties to provide safe equipment.  *DeBiasio v. Illinois Central Railroad*, 52 F.3d 678, 683 (7th Cir. 1995); *Richardson v. Consolidated Rail Corp.*, 17 F.3d 213, 216 (7th Cir. 1994) (BIA, also known as LIA).  LIA does not create private rights of action, but employees alleging injury resulting from a violation of the LIA may sue under FELA.  *Crane v. Cedar Rapids & Iowa Railway Company*, 395 U.S. 164, 166 (1969).  Thus, an employee may recover under FELA for injuries resulting in whole or in part from a railroad carrier's negligence or from its violation of the LIA.  *O'Donnell v. Elgin, Joliet and Eastern Railway Co.*, 338 U.S. 384, 391 (1949); *Crane*, 395 U.S. at 166.

Plaintiff's particular claim is based upon the theory that locomotive 6022 was not

operating in a proper or safe condition, nor functioning in a "normal, natural and usual manner." These circumstances violate the LIA. *See* 49 U.S.C. § 20701; *Meyers v. Reading Company*, 331 U.S. 477, 483 (1947). Plaintiff argues that the improper or unsafe condition was that the 6022 had a tendency to "lunge" or "surge" at the moment of coupling. This appears to be a weak case, even by FELA's standards. Some of the testimony supports that similar "rough couplings" are not an unusual occurrence. Moreover, it is unclear whether such a low speed lunge or surge is actually unsafe. The nature of the incident itself appears mild. No other evidence suggests other injuries from similar incidents. The testimony of the two key witnesses seems to differ on some key interpretation of events. These factors cast substantial doubt on the ability of Plaintiff to meet even the low bar of proof required in a FELA case.

Nevertheless, some of the evidence does suggest that locomotive 6022 was prone to such surges to a greater extent than others. Moreover, Plaintiff claims to have warned Defendant about the tendency to lunge or surge. Should the jury believe this testimony, it would not be unreasonable to conclude that the locomotive was unsafe. A jury could also believe that Defendant was on notice of the unsafe condition and was negligent in failing to attend to it. These inferences would be sufficient for the claim to survive summary judgment under FELA.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is DENIED.

The Court will set a conference in the near future to assign a trial date.

cc: Counsel of Record